| | |
|---|---|
| 1 | RODNEY M. HUDSON (SBN 189363) |
| 2 | rodney.hudson@dbr.com<br>DRINKER BIDDLE & REATH LLP |
| 3 | 50 Fremont Street, 20th Floor<br>San Francisco, CA  94105-2235 |
| 4 | Telephone:   (415) 591-7500<br>Facsimile:    (415) 591-7510 |
| 5 | Counsel for Defendants |
| 6 | JANSSEN RESEARCH & DEVELOPMENT,<br>LLC; JANSSEN PHARMACEUTICALS, |
| 7 | INC.; JANSSEN ORTHO LLC; BAYER<br>HEALTHCARE PHARMACEUTICALS |
| 8 | INC. |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| WILLIAM CHISHOLM, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JANSSEN RESEARCH & DEVELOPMENT, LLC F/K/A JOHNSON AND JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT LLC; JOHNSON & JOHNSON COMPANY; JANSSEN ORTHO, LLC; JANSSEN PHARMACEUTICALS, INC. F/K/A JANSSEN PHARMACEUTICA INC. F/K/A ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.; BAYER CORPORATION; BAYER HEALTHCARE LLC; BAYER HEALTHCARE PHARMACEUTICALS INC.; BAYER PHARMA AG; BAYER HEALTHCARE AG; BAYER AG; MCKESSON CORPORATION; AND JOHN DOES 1-100, INCLUSIVE,<br><br>Defendants. | Case No. 2:16-cv-9075<br><br>**NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332 AND 1446(b) (DIVERSITY)**<br><br>**[DEMAND FOR JURY TRIAL]** |

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 Defendants Janssen Research & Development, LLC; Janssen Pharmaceuticals, Inc.; Janssen Ortho LLC and Bayer HealthCare Pharmaceuticals Inc. (collectively, "Removing Defendants") hereby remove to this Court the civil action filed by Plaintiff in the case of *William Chisholm v. Janssen Research & Development, et al.*, Orange County Superior Court, Case No. 30-2016-00879308-CU-PL-CXC. In support of Removal, Removing Defendants state as follows:

## I.

## INTRODUCTION

1. This Court has diversity jurisdiction over this action because proper parties on each side of the controversy are diverse and the amount in controversy exceeds the jurisdictional minimum.

2. Plaintiff William Chisholm is allegedly a resident of California and filed this action in Orange County Superior Court on October 6, 2016. (Ex. A, Compl. ¶ 4). This action was later ordered to be transferred to Los Angeles Superior Court as part of the *Xarelto Cases* (Judicial Council Coordinated Proceeding No. 4862) (Ex. B, Coordination Order). Copies of all pleadings, processes, and orders in the state-court action are attached hereto as Exhibits A and B. Plaintiff's Complaint alleges product liability causes of action against nonresident Removing Defendants,[1] along with fraudulently joined local Defendant McKesson Corporation, a distributor of pharmaceutical medications with its principal place of business in California. (Ex. A, Compl. ¶ 20). As more fully set forth below, because no viable claim has been alleged against local Defendant

---

[1] Plaintiff's Complaint also names as defendants Johnson & Johnson (erroneously sued as Johnson & Johnson Company); Bayer Corporation; Bayer HealthCare LLC; and Bayer Pharma AG, Bayer HealthCare AG, Bayer AG (three diverse German corporations), that have not been served and whose consent is not required. As set forth herein, effective as of July 1, 2016, Bayer HealthCare AG was merged into Bayer AG as universal successor.

McKesson, the citizenship of McKesson can be disregarded for purposes of removal. Several other actions fraudulently joining McKesson filed in California and removed to federal court have been transferred to *In re: Xarelto (Rivaroxaban) Products Liability Litigation*, MDL No. 2592, pending in the United States District Court for the Eastern District of Louisiana. *See Joanne Nash v. Janssen Research & Development, LLC*, Case No. 2:15-cv-03868-AB-E (C.D. Cal. June 4, 2015), Doc. 19 (attached as Exhibit D); *Jamie Barba, et al. v. Janssen Research & Development, LLC, et al.*, Case No. 8:15-cv-01548-DOC-JCG (C.D. Cal. Oct. 27, 2015), Doc. 17 (attached as Exhibit E); *Earl Ullom v. Janssen Research & Development, LLC, et al.*, Case No. 1:16-cv-01109-DAD-JLT (E.D. Cal. Aug. 16, 2016), Doc. 9 (attached as Exhibit F); *Alice Voros, et al. v. Janssen Research & Development, LLC*, Case No. 2:16-cv-07627-MFW-DTBx (C.D. Cal. Nov. 2, 2016), Doc. 19 (attached as Exhibit G); *Heidi Rorick-Evans v. Johnson & Johnson Company, et al.*, Case No. 2:16-cv-08283-MFW-(DTBx) (C.D. Cal. Nov. 17, 2016), Doc. 3 (attached as Exhibit H).

3.   As the Honorable André Birotte held in *Nash*, "with respect to the alleged fraudulent joinder of McKesson and its implications for removal, staying the case as opposed to adjudicating the issue prior to transfer [to the MDL] is favorable because it will promote judicial consistency and avoid conflicting results." *Nash,* Case No. 2:15-cv-0368-AB-E, Order at *4. Properly alleged, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1446.

4.   Plaintiff's Complaint makes blanket allegations generally against all defendants for strict liability, negligence, breach of express warranty, breach of implied warranty, fraud, and violations of Business and Professions Code §§ 17200 and 17500, as well as Civil Code § 1750.

5.   This is one of many product liability lawsuits filed in federal and state courts throughout the country concerning Xarelto®, a pharmaceutical prescription medication used to prevent blood clots, treat deep vein thrombosis and pulmonary

embolism, and prescribed for patients recovering from knee or hip replacement surgery. On December 14, 2014, the Judicial Panel on Multi-District Litigation ("JPML") concluded that centralization of product liability actions involving Xarelto® in a single federal court forum was appropriate for these claims and issued an Order establishing MDL No. 2592, *In re: Xarelto (Rivaroxaban) Products Liability Litigation.* The JPML assigned MDL No. 2592 to the United States District Court for the Eastern District of Louisiana. The MDL Court currently oversees numerous federal actions involving "allegations that plaintiffs suffered severe bleeding and other injuries as a result of taking Xarelto®." JPML Transfer Order at 3 (attached as Exhibit C). There are numerous actions pending in the MDL.

6. Removing Defendants will notify the JPML of this action as required by the Rules of Procedure of the JPML and seek inclusion of this action in the MDL proceeding. *See Rules of Procedure of Judicial Panel on Multi-District Litigation*, 199 F.R.D. 425 (J.P.M.L. 2001). Removing Defendants also request that this action be stayed pending transfer to the MDL Court in order to conserve resources and avoid duplicative litigation. Numerous federal courts in California have stayed actions pending transfer to an MDL proceeding. *See Nash*, Case No. 2:15-cv-03868-AB-E (C.D. Cal. June 4, 2015), Doc. 19 (Ex. D); *Barba*, Case No. 8:15-cv-01548-DOC-JCG (C.D. Cal. Oct. 27, 2015), Doc. 17 (Ex. E); *Buries v. Johnson & Johnson, et al.*, Case. No. 3:15-cv-04282-HSG (N.D. Cal. Dec. 2, 2015), Doc. 46 (Ex. I); *Bohannon v. Johnson & Johnson, et al.*, Case. No. 3:15-cv-04295-HSG (N.D. Cal. Dec. 2, 2015) (Ex. I); *Hulsh v. Bayer HealthCare Pharmaceuticals Inc., et al.*, Case No. 15-cv-04801-JST (N.D. Cal. Jan. 11, 2016), Doc. 29 (Ex. J); *Alanis v. Pfizer*, Case No. 1:14-cv-00365 LJO MJS, 2014 U.S. Dist. LEXIS 60970 (E.D. Cal. May 1, 2014); *Weaver v. Pfizer*, Case No. 2:14-cv-0818 KJM KJN, 2014 U.S. Dist. LEXIS 67174 (E.D. Cal. May 15, 2014); *Stevens v. Organon USA, Inc*., Case No. C 13-05713 WHA, 2014 U.S. Dist. LEXIS 5952

(N.D. Cal. Jan. 13, 2014).

7. As the MDL Court has been charged with overseeing the Xarelto® litigation nationwide, this Court should defer to the MDL Court's processes to ensure that this litigation is managed in a consistent and efficient manner. Xarelto® cases involving issues of joinder and application of the "forum defendant rule" have been tagged for transfer to and consideration by the MDL Court.

## II.

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

8. <u>Service</u>. Plaintiff's Complaint was served on Janssen Research & Development, LLC on November 7, 2016. (Ex. K, Hudson Decl. ¶ 14). Plaintiff's Complaint was served on Bayer HealthCare Pharmaceuticals Inc. on November 8, 2016. (*Id.* at ¶ 15). Plaintiff's Complaint was served on Janssen Pharmaceuticals, Inc. and Janssen Ortho LLC on November 9, 2016. (*Id.* at ¶ 16). Accordingly, pursuant to 28 U.S.C. §§ 1446(b)(1) and (b)(2)(B), this Notice of Removal is timely and was filed within 30 days of service. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (30-day time period under removal statute begins to run from the date of formal service).

9. <u>Defendants Not Named or Served</u>. All Removing Defendants that have been served have joined in this Removal, and the consent of Johnson & Johnson, Bayer Corporation, Bayer HealthCare LLC, Bayer Pharma AG, Bayer HealthCare AG and Bayer AG, none of which have been served, is not necessary or required. 28 U.S.C. § 1446(b)(2)(A); *Destfino v. Reiswig*, 630 F.3d 952, 955 (9th Cir. 2011). In addition, as set forth herein, Bayer HealthCare AG is no longer a separate entity. Although Plaintiff purports to allege claims against certain unnamed and "John Doe" defendants (Ex A., Compl.), their citizenship is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1) ("For purposes of removal under this chapter, the citizenship of Defendants sued under fictitious names shall be disregarded").

10. <u>Fraudulently Joined Defendant</u>. As set forth in more detail below, because McKesson has been fraudulently joined, its consent to removal is not required. 28 U.S.C. § 1446(b)(2)(A); *United Computer Sys., Inc. v. AT&T Info. Sys.,* 298 F.3d 756, 761 (9th Cir. 2002).

11. <u>State Court Filings</u>. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders and other papers served and filed in the state court action are attached hereto as Exhibits A and B.

12. <u>Venue</u>. The United States District Court for the Central District of California is within the county in which the state court action was pending, and therefore this Court is the proper forum for this action pursuant to 28 U.S.C. §§ 89(b) and 1441(a).

13. If any question arising regarding the propriety of the removal of this action, the Removing Defendants respectfully request the opportunity to present a brief and be heard at oral argument in support of removal.

14. No previous application has been made for the relief requested herein.

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and is an action between citizens of different states.

## III.

## JURISDICTION

16. Removing Defendants assert that this action may be removed under 28 U.S.C. § 1441(a) because this Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(1). There is diversity of citizenship between the Plaintiff and Removing Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

///
///
///

### A. There is Complete Diversity of Citizenship Between All Properly Joined Parties

#### 1. Citizenship of the Plaintiff

17. Based on the allegations in the Complaint, Plaintiff William Chisholm, is, and at the time the action was filed, a citizen and resident of California. (Ex. A, Compl. ¶ 4).

#### 2. Manufacturing Defendants Are Not Citizens of California

18. The relevant timeframe for determining citizenship is when the complaint is filed. *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131–32 (9th Cir. 2002).

19. At the time Plaintiff commenced this civil action, and at all times since, Defendant Janssen Research & Development, LLC was and is a limited-liability company whose sole member is (and was when the Complaint was filed) Centocor Research & Development, Inc., a Pennsylvania corporation with its principal place of business in Pennsylvania. (Ex. K, Hudson Decl. ¶ 2). Accordingly, Janssen Research & Development, LLC is a citizen of Pennsylvania for the purposes of diversity jurisdiction. *See GMAC Commercial Credit LLC v. Dillard Dep't. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004) (holding that the citizenship of a limited-liability company is determined by the citizenship of its members).

20. At the time Plaintiff commenced this civil action, and at all times since, Defendant Janssen Pharmaceuticals, Inc. was and is a Pennsylvania corporation with its principal place of business in New Jersey. (Ex. A, Compl. ¶ 8; Ex. K, Hudson Decl. ¶ 3). Accordingly, Janssen Pharmaceuticals, Inc. is a citizen of Pennsylvania and New Jersey for the purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c) (for the purposes of determining citizenship, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of

business").

21. At the time Plaintiff commenced this civil action, and at all times since, Defendant Janssen Ortho LLC was and is a limited-liability company whose sole member is (and was when the Complaint was filed) OMJ PR Holdings, a corporation incorporated in Ireland with a principal place of business in Bermuda. (Ex. K, Hudson Decl. ¶ 4). Accordingly, Janssen Ortho LLC is a citizen of Ireland and Bermuda for the purposes of diversity jurisdiction. *See GMAC Commercial Credit LLC v. Dillard Dep't. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004) (holding that the citizenship of a limited-liability company is determined by the citizenship of its members).

22. At the time Plaintiff commenced this civil action, and at all times since, Defendant Johnson & Johnson is, and was a New Jersey Corporation which has its principal place of business in New Jersey. (Ex. A, Compl. ¶ 6; Ex. K, Hudson Decl. ¶ 5). Accordingly, Johnson & Johnson is a citizen of New Jersey for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c) (for the purposes of determining citizenship, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

23. At the time Plaintiff commenced this civil action, and at all times since, Defendant Bayer HealthCare Pharmaceuticals Inc. was and is a Delaware corporation with its principal place of business in New Jersey. (Ex. A, Compl. ¶ 12; Ex. K, Hudson Decl. ¶ 6, 7). Accordingly, Bayer HealthCare Pharmaceuticals Inc. is, and was when the Complaint was filed, a citizen of Delaware and New Jersey for the purposes of diversity jurisdiction. *See id*.

24. At the time Plaintiff commenced this civil action, and at all times since, Defendant Bayer Corporation was and is an Indiana corporation with its principal place of business in Pennsylvania. (Ex. A, Compl. ¶ 9; Ex. K, Hudson Decl. ¶ 6, 8). Accordingly, Bayer Corporation is, and was when the Complaint was

1 filed, a citizen of Indiana and Pennsylvania for the purposes of diversity
2 jurisdiction. *See id.*
3      25.    At the time Plaintiff commenced this civil action, and at all times
4 since, Defendant Bayer HealthCare LLC was a limited liability company whose
5 members are Bayer Medical Care Inc., Bayer Essure Inc., Bayer West Coast
6 Corporation, Dr. Scholl's LLC, Coppertone LLC, MiraLAX LLC, NippoNex Inc.,
7 Bayer HealthCare US Funding LLC, and Bayer Consumer Care Holdings LLC.
8 (Ex. K, Hudson Decl. ¶ 6, 9–10). The citizenship of each of the members of
9 Defendant Bayer HealthCare LLC for purposes of determining diversity of
10 citizenship is as follows:

      a. Bayer Medical Care Inc. is a Delaware corporation with its principal place of business in Pennsylvania and, therefore, is a citizen of Delaware and Pennsylvania for purposes of determining diversity of citizenship.

      b. NippoNex Inc. is a Delaware corporation with it principal place of business in New Jersey and, therefore, is a citizen of Delaware and New Jersey for purposes of determining diversity of citizenship.

      c. Bayer Consumer Care Holdings LLC is a Delaware limited liability company, the sole common member of which is Bayer East Coast LLC, whose sole preferred member of which is Bayer US Funding LLC; Bayer East Coast LLC is a Delaware limited liability company wholly owned by Bayer US Holding LP, a Delaware limited partnership in which Bayer World Investments B.V. and Bayer Solution B.V., each of which is a private company with limited liability incorporated under Dutch law with its principal places of business in the Netherlands. Bayer Consumer Care Holdings LLC is, therefore, a citizen of the Netherlands for purposes of determining diversity of citizenship.

1	    d.	Bayer HealthCare US Funding LLC is a Delaware limited liability
2	       company, the members of which are Bayer AG, Bayer Pharma AG,
3	       and Bayer World Investments B.V.; Bayer AG and Bayer Pharma
4	       AG are a German corporations, each with its principal place of
5	       business in Germany; Bayer HealthCare US Funding LLC is a
6	       citizen of Germany for purposes of determining diversity of
7	       citizenship.
8	    e.	Dr. Scholl's LLC, Coppertone LLC, and MiraLAX LLC are
9	       Delaware limited liability companies, each of whose sole member
10	       is Bayer HealthCare US Funding LLC; Dr. Scholl's LLC,
11	       Coppertone LLC, and MiraLAX LLC are citizens of Germany for
12	       purposes of determining diversity of citizenship.
13	    f.	Bayer West Coast Corporation is a Delaware corporation with its
14	       principal place of business in New Jersey and, therefore, is a citizen
15	       of Delaware and New Jersey for purposes of determining diversity
16	       of citizenship.  (Ex. K, Hudson Decl. ¶ 6).
17	    g.	Bayer Essure Inc. is a Delaware corporation with its principal place
18	       of business in New Jersey and, therefore, is a citizen of Delaware
19	       and New Jersey for purposes of determining diversity of
20	       citizenship.  (Ex. K, Hudson Decl. ¶ 6).
21	   26.	Therefore, because the members of Bayer HealthCare LLC are citizens
22	of Delaware, New Jersey, New York, Pennsylvania, Germany and the Netherlands
23	for purposes of determining diversity of citizenship, Bayer HealthCare LLC is also
24	a citizen of Delaware, New Jersey, New York, Pennsylvania, Germany and the
25	Netherlands for purposes of determining diversity of citizenship.  *See Zambelli*
26	*Fireworks Mfg. Co., Inc.*, 592 F.3d at 420.
27	   27.	At the time Plaintiff commenced this civil action, and at all times
28	since, Defendant Bayer Pharma AG was and is a foreign corporation with its

principal place of business in Germany. (Ex. A, Compl. ¶ 13; Ex. K, Hudson Decl. ¶ 11). As such, for the purposes of diversity jurisdiction, Bayer Pharma AG is a citizen of a foreign state. *See* 28 U.S.C. § 1332(a)(3).

28. Effective as of July 1, 2016, Bayer HealthCare AG was merged into Bayer AG as universal successor. (Ex. K, Hudson Decl. ¶ 12). Bayer AG is a foreign corporation with its principal place of business in Germany. *See id.* For the purposes of diversity jurisdiction, Bayer AG is a citizen of a foreign state. *Id.*

29. At the time Plaintiff commenced this civil action, and at all times since, Defendant Bayer AG was and is a foreign corporation with its principal place of business in Germany. (Ex. A, Compl. ¶ 17; Ex. K, Hudson Decl. ¶ 13). As such, for the purposes of diversity jurisdiction, Bayer AG is a citizen of a foreign state. *See id.*

30. Although McKesson is alleged to be a California corporation with its principal place of business in San Francisco (Ex. A, Compl. ¶ 20), as set forth in more detail below, McKesson is a distributor that has been fraudulently joined and its citizenship can be disregarded for jurisdictional purposes.

**B.    The Amount-in-Controversy is Satisfied**

31. The amount-in-controversy requirement for diversity jurisdiction is satisfied in this case even though Plaintiff has not made a specific dollar demand. "[B]y the preponderance of the evidence," it is clear from the face of Plaintiff's Complaint "that the amount in controversy exceeds [$75,000]." 28 U.S.C. § 1446(c)(2)(b); *see also* 28 U.S.C. § 1332(a).

32. Plaintiff's Complaint alleges that William Chisholm suffered "severe and permanent" injuries and has "incurred significant expenses for medical care" as a result of Defendants' acts and omissions. (Ex. A, Compl. ¶¶ 89, 110, 116, 123, 135, 136 and 163).

33. Plaintiff asserts claims including negligence, strict liability, breach of express and implied warranties, fraud, and loss of consortium. Plaintiff seeks to

recover unspecified damages, including damages for medical treatment, lost wages, and pain and suffering. (Ex. A, Compl. ¶¶ 160–168, Prayer for Relief). Plaintiff seeks to recover compensatory damages, economic and non-economic damages, as well as punitive damages. *See id.*

34. Although Defendants deny Plaintiff's allegations and deny that they are liable to Plaintiff, the allegations in the Complaint that the Plaintiff suffered "severe and permanent" injuries and "significant expenses" plainly indicates that the amount in controversy exceeds $75,000. *See Campbell v. Bridgestone/ Firestone, Inc.*, No. CIVF051499 -FVSDLB, 2006 WL 707291, at *2 (E.D. Cal. Mar. 17, 2006) (apparent from complaint that amount in controversy met where plaintiffs asserted strict products liability, negligence, and breach of warranty claims against multiple defendants and complaint sought compensatory damages for wage loss, hospital and medical expenses, general damages, and loss of earning capacity); *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1107–08 (9th Cir. 2010) ("even though the state court complaint does not specify an amount" it satisfied amount in controversy requirement by requesting damages for, among other things, wrongful death, loss of consortium, negligence and funeral, medical and burial expenses); *McCoy v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002) ("courts have routinely held that when plaintiffs allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint that the plaintiff's damages exceeded the jurisdictional amount").

35. It is widely recognized that a complaint for severe and permanent injuries arising from prescription medications facially satisfies the amount-in-controversy requirement. *See, e.g., In re Rezulin Prods Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"); *see also In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.*, 692 F. Supp. 2d 1025, 1039–40 (S.D. Ill. 2010).

## IV.

## REMOVAL IS PROPER BECAUSE MCKESSON IS FRAUDULENTLY JOINED

36.  Local Defendant McKesson is fraudulently joined because there is no viable claim based on the facts alleged in the Complaint against a distributor of pharmaceutical medications.  Under the fraudulent joinder doctrine, a court should disregard the citizenship of a defendant, where there is no possibility that the plaintiff will be able recover against the fraudulently joined defendant. *United Computer Sys. V. AT&T Info. Sys.,* 298 F.3d 756, 761 (9th Cir. 2002).  As set forth below, McKesson was fraudulently joined because:  (1) There is no basis for liability against a distributor of an FDA-approved medication; and (2) the allegations of the Complaint are impermissibly directed against all "defendants," collectively.

37.  Other personal injury actions, fraudulently joining McKesson, were removed to the Central District of California and were transferred to and are now pending in MDL No. 2592.  *See Nash*, Case No.  2:15-cv-03868-AB-E (C.D. Cal. June 4, 2015), Doc. 19 (Ex. D); *Barba*, Case No. 8:15-cv-01548-DOC-JCG (C.D. Cal. Oct. 27, 2015), Doc. 17 (Ex. E); *Voros*, Case No. 2:16-cv-07627-MFW-DTBx (C.D. Cal. Nov. 2, 2016), Doc. 19 (Ex. G); *Rorick-Evans*, Case No. 2:16-cv-08283-MFW-DTBx (C.D. Cal. Nov. 17, 2016), Doc. 3 (Ex. H).  Another action, fraudulently joining McKesson, was removed to the Eastern District of California and also is now pending in MDL No. 2592.  *See Ullom*, Case No. 1:16-cv-01109-DAD-JLT (E.D. Cal. Aug. 16, 2016), Doc. 9 (Ex. F).

**A.**  **There is No Claim for Distributor Liability Based on the Facts Alleged**

38.  California law recognizes important limitations on liability arising from use of prescription medications.  In *Brown v. Superior Court*, 44 Cal.3d 1049 (1988), the California Supreme Court adopted comment k to Section 402A of the *Restatement of Torts (Second)* and held that California does not recognize claims

for strict liability design defect or strict liability failure to warn for prescription medications. The court noted that there is "an important distinction between prescription drugs and other products" that are commonly used because the benefits of prescription medications include saving lives and improving the health of individuals. 44 Cal.3d at 1063. As a result, the court noted that California's "[p]ublic policy favors the development and marketing of beneficial new drugs, although some risks, and perhaps serious ones, might accompany their introduction …." *Id.*

39. Similarly California courts have held that individuals and entities, such as pharmacies, that are not involved in the manufacture or labeling of a prescription medication are not to be held liable for alleged product defects. *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672 (1985). In declining to recognize product liability claims against pharmacists, the court noted that "[t]he pharmacist is in the business of selling prescription drugs, and his role begins and ends with the sale." *Id*. at 679. If individuals or entities that do not manufacture, label or design prescription products are held liable, they "might restrict availability [of important medications] by refusing to dispense drugs which pose even a potentially remote risk of harm, although such medications may be essential to the health or even the survival of patients." *Id.* at 680–81.

40. Likewise courts have held that there is no viable cause of action for failure to warn or otherwise against intermediate distributors of pharmaceutical medications, such as McKesson, under California law. *Skinner v. Warner-Lambert Co.*, No. CV 03-1643-R(RZX), 2003 WL 25598915 (C.D. Cal. Apr. 28, 2003). The court in *Skinner* held "there is no possibility that plaintiffs could prove a cause of action against McKesson, an entity which distributed [the] FDA-approved medication to pharmacists in California." *Id*. at *1; *see also Leeson v. Merck & Co.*, Case No. S-05-2240 WBS PAN, 2006 WL 3230047, at *3 (E.D. Cal. Jan. 27, 2006) ("Yet only a handful of judges have found that California law does not

clearly exempt distributors from strict liability for failure to warn."). As in *Skinner*, there is no possibility of recovery against McKesson in this case.

41. Recent U.S. Supreme Court decisions also support limits on liability of entities, such as distributors, that cannot change the label on a prescription medication. In *Pliva v. Mensing*, 131 S. Ct. 2567 (2011), the Supreme Court held that state law claims alleging failure to warn of risks associated with a generic medication were preempted because federal law precludes manufacturers of generic medications from adopting a label that is different from the brand-name medication. *See also Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013). In applying *Mensing* to the facts and role of a distributor of pharmaceutical medications, the court in *In re Fosamax (Alendronate Sodium) Products Liability Litigation* (No. II), MDL No. 2243 (JAP-LHG), 2012 WL 181411 (D. N.J. Jan. 17, 2012), held that "[a distributor of a pharmaceutical medication] has no power to change [the] label. That power lies with the applicant who filed the New Drug Application (NDA)" and "if FDA had 'become aware of new safety information' in connection with [a prescription medication] use that 'it believe[d] should be included in the labeling,' FDA must notify the holder of the NDA to initiate the changes. Neither of these procedures involves a distributor." *Id.* at *3 (internal citations omitted); *accord Stevens v. Cmty. Health Care, Inc.*, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011). Only the holder of an NDA, not distributors, responsible for the label of a brand-name medication such as Xarelto® may change the label under certain circumstances. The court in *Brazil v. Janssen Research and Development LLC et al.*, No. 4:15-CV-0204, 2016 WL 3748771, -- F.Supp.3d -- (N.D. Ga. 2016), recently held as follows, "[w]hen a company does not have the NDA, it has 'no more power to change the label' of a drug than a generic manufacturer." (citations omitted). Similarly, the Sixth Circuit in *Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 940 (6th Cir. 2014), held that failure-to-warn claims against a non-NDA holder also were preempted. In

1  *Davocet*, Eli Lilly & Co. ("Lilly") had held the NDA for a brand-name drug, sold
2  the NDA to another company, and continued manufacturing the drug for a generic
3  company.  The Sixth Circuit held that failure-to-warn claims against Lilly involving
4  use of the drug after Lilly sold its NDA were preempted.  *Darvocet,* 756 F.3d at
5  940.  The Sixth Circuit reasoned that "[a]fter the divestiture [of the NDA], Lilly had
6  no more power to change the label than did" genetic manufacturers.  *Id.*; *see also In*
7  *re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 2012 WL 181411, at
8  *3–*4 (D.N.J. Jan. 17, 2012) (holding that claims against distributor were
9  preempted because it could not change labeling under federal law, and explaining
10 "[t]hat power lies with the applicant who filed the New Drug Application (NDA)
11 seeking approval to market Fosamax"); *Stevens v. Cmty. Health Care, Inc.*, 2011
12 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011) ("As a distributor, … DAVA
13 had no ability to change labeling or warnings and thus … cannot be subject to
14 liability in connection with a state law claim premised on a 'failure to warn.'").

### B.  Plaintiff Has Failed to Allege Sufficient Facts As to McKesson

16       42.  There is no claim against McKesson as a distributor of a
17 pharmaceutical medication, nor does Plaintiff's Complaint allege sufficient facts to
18 state a claim against McKesson.  Other courts have held that McKesson was
19 fraudulently joined where there were insufficient allegations to establish liability
20 against McKesson.  *See, e.g., Aronis v. Merck & Co.*, Case No. Civ. S-05-0486
21 WBS DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2006).  When making a
22 fraudulent joinder determination, a court must only consider the allegations pled in
23 the complaint as of the time of removal and should not speculate about facts or
24 claims that Plaintiff did not plead.  *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74
25 (7th Cir. 1992).

26       43.  Plaintiff's Complaint improperly pleads claims as to "Defendants"
27 generally, rather than identifying specific conduct of each defendant.  (Ex. A,
28 Compl. ¶ 21) (parties "referred to … jointly as 'Defendants'").  Many federal courts

have held that allegations against "defendants," collectively, are insufficient to support remand. *Badon v. R J R Nabisco Inc.,* 224 F.3d 382, 391-93 (5th Cir. 2000) (affirming finding of fraudulent joinder where plaintiff's claims simply referred to "defendants" collectively and where plaintiffs failed to allege any "particular or specific activity" on the part of each of the in-state defendants); *Staples v. Merck & Co., Inc.*, 270 F. Supp. 2d 833, 844 (N.D. Tex. 2003) (allegation that "*Defendants* committed actual fraud" insufficient to warrant remand); *Banger v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633, 638 (S.D. Miss. 2002) ("conclusory and generic allegations of wrongdoing on the part of all Defendants … are not sufficient to show that [non-diverse defendant] was not fraudulently joined"); *In re Rezulin Prods. Liab. Litig*, 168 F. Supp. 2d 136, 140 & n.10 (S.D.N.Y. 2001) (remand should be denied where "plaintiffs make no specific allegations against [the non-diverse defendant] at all, instead [they] attribut[e] wrongdoing to the collective 'defendants'"); *In re Rezulin Prods. Liab. Litig,* 133 F. Supp. 2d 272, 291 (S.D.N.Y. 2001) (finding fraudulent joinder where plaintiffs "lump" non-diverse and diverse defendants together "and attribute the acts alleged … to the 'defendants' generally"); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 550 (E.D. Ky. 2001) (denying remand where the complaint "commonly employs the generic term 'defendants'"); *see also, Sherman v. Stryker*, 2009 U.S. Dist. LEXIS 34105, at *6 (C.D. Cal. Mar. 30, 2009) (quoting *Lancaster Cmty Hop. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir. 1991)) (in a products liability action, dismissing negligent and fraudulent misrepresentation claims where plaintiff "does not differentiate these claims as to [one defendant] and the other defendants" and fails to "specifically allege 'the role of each defendant in each scheme'"). Indeed, such allegations are particularly inadequate where, as here, "plaintiffs' complaint commonly employs the generic term 'defendants,' [but] the context and nature of the individual allegations make clear that only the drug companies are targeted." *See Salisbury*, 166 F. Supp. 2d at 550. Other than the

generic boilerplate allegations that McKesson distributed Xarelto®, the Complaint is devoid of any particular facts or specific allegations that would give rise to liability of McKesson under California law.

44. Plaintiff's claims for failure to warn, negligent misrepresentation and fraud also fail because (1) Plaintiff does not identify a single statement made by McKesson that was allegedly fraudulent or deceptive, (2) Plaintiff fails to allege any fact that was concealed that McKesson had a duty to disclose as a mere distributor of a product, and (3) Plaintiff has not alleged any connection between conduct of McKesson and Plaintiff's alleged injuries from Xarelto® that could satisfy the cause-in-fact elements of these claims, including claims for fraud which must be pled with particularity under Federal Rule of Civil Procedure 9(b). *See, e.g., Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet 9(b)'s particularity requirements.") (citation omitted).

45. Blanket allegations of purported generic misrepresentations by manufacturing defendants cannot be attributed to McKesson and cannot defeat diversity jurisdiction. *See, e.g., Fisher v. Paul Revere Ins. Grp.*, 55 F. App'x 412, 414 (9th Cir. 2003) (affirming trial court's determination that non-diverse defendant had been fraudulently joined and refusal to remand case to state court where the plaintiff "did not specifically allege facts that would support any elements of deceit" for the non-diverse defendant, as required by Rule 9(b)); *In re Rezulin Prods Liab. Litig.*, 133 F. Supp. 2d 272, 283 (S.D.N.Y. 2001) (finding defendant sales representatives fraudulently joined because plaintiffs did not satisfy Rule 9(b)'s requirements).

46. Plaintiff's Complaint alleges that certain statements on the website Xarelto.com are misleading and alleges that "[a]s the Defendants state on their website" various statements are false and misleading. (Compl. ¶ 31–35). There is

no allegation that McKesson is involved with this website or made any of the alleged statements or that they were relied upon by Plaintiff or his treating physicians. The website is maintained by certain of the Removing Defendants, and there is no allegation that McKesson has any involvement with this website.

47. Plaintiff's Complaint does not allege detrimental reliance on any statement by McKesson.

48. Plaintiff has failed to identify any specific statements that McKesson made or was obligated to make as a distributor of a pre-packaged prescription medication.

49. If any question arises as to the propriety of the removal of this action, Removing Defendants request the opportunity to present a brief and oral argument in support of their position that this action is removable.

### C. The Other Prerequisites for Removal Have Been Satisfied.

50. In addition to satisfying the requirements of diversity jurisdiction, Removing Defendants have satisfied all other requirements for removal.

51. This notice is filed within one year of the commencement of this action. This notice of removal is timely pursuant to 28 U.S.C. § 1441(b) and unserved defendants "need not consent to removal." *Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir. 2009).

52. In accordance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders in the state court action is attached hereto as Exhibits A and B.

53. Venue for removal is proper in this District and division, *see* 28 U.S.C. § 1441(a)(2), because this District and division embrace the Superior Court of the State of California, in and for Los Angeles County, the forum in which the removed action was pending, *see* 28 U.S.C. § 87.

54. In accordance with 28 U.S.C. § 1446(d), Removing Defendants will promptly provide written notice of the filing of this Notice of Removal to the

1  Plaintiff and shall file a copy of this Notice along with a Notice of Filing of Notice
2  of Removal with the Clerk of the Superior Court of the State of California, in and
3  for Los Angeles County, where this action is currently pending.
4  　　　　WHEREFORE, Removing Defendants give notice that the matter bearing
5  Case No. 30-2016-00879308-CU-PL-CXC pending in the Superior Court of the
6  State of California, in and for Los Angeles County, is removed to the United States
7  District Court for the Central District of California, and requests that this Court
8  retain jurisdiction for all further proceedings in this matter.

## DEMAND FOR JURY TRIAL

10  　　　Removing Defendants hereby demand a jury trial on all claims and issues so
11  triable.

Dated:  December 7, 2016　　　　　　　DRINKER BIDDLE & REATH LLP


By: /s/  *Rodney M. Hudson*
　　　Rodney M. Hudson

Counsel for Defendants
JANSSEN RESEARCH &
DEVELOPMENT, LLC; JANSSEN
PHARMACEUTICALS, INC.;
JANSSEN ORTHO LLC;
BAYER HEALTHCARE
PHARMACEUTICALS INC.